UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN DEREK RILEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02001-JPH-TAB |
| | ) | |
| DENNIS REAGLE, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Kevin Riley was convicted of murder and unlawful possession of a firearm by a serious violent felon and sentenced to an aggregate term of 91 years. Mr. Riley now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his petition for a writ of habeas corpus is **denied,** and a certificate of appealability will not issue.

## I.    Background

### A. Factual Background, Trial, and Direct Appeal

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> In January 2014, Riley was dating Marian Robertson. On January 13, 2014, they spent the day running errands. They went to a pawn shop and a gas station, where they were recorded by surveillance cameras. Thereafter, they went to another convenience store where

1

they talked to Marian's cousin. Marian's cousin told Marian that Marian's sister, Tamika Robertson, wanted to talk to Marian.

Marian called Tamika, who reported Riley was having sex with April Bailey. Tamika believed April had AIDS. Marian confronted Riley, who denied the sexual allegations. Riley and Marian both contacted April. Subsequently, they drove over [to] the house where April lived with her three children and another couple.

April came outside to talk to Marian. Marian spoke with April in her driveway and in the street near Marian's car. Riley stayed in the car during their conversation. April's son, K.B., saw the women talking. April's daughter, M.B., called out the door to see if her mother was alright and then returned inside. Toward the end of the conversation, April gave Marian a "side hug." Marian heard, "Pow." Riley told Marian, "Bitch, get in the car . . . Bitch, drive, before I kill you." They drove away. M.B. and K.B. heard the gunshot and exited the house to find their mother lying in the middle of the street. She had been shot in the face.

Marian and Riley drove to the house of Riley's brother, Mack. Riley went inside while Marian stayed in the car. Then, they drove to the elder care facility where Riley's mother resided. They signed in at 5:30 p.m. Around 8:00 p.m., Marian took Riley to the home of his child's mother, Demetria Morris. Marian then returned to spend the night with Riley's mother at the elder care facility. Marian did not contact the police.

The next day, Marian and Riley ran some errands. Later that day, spurred by a tip, the police arrested Marian and Riley. Marian was interviewed but lied to the police about her interactions with April because she was afraid of Riley. During her second interview with the police, after she was assured the police would keep her safe, Marian told them Riley had shot April. Riley denied having been in contact with April that day. The State charged Riley with murder.

While incarcerated, Riley contacted his brother, Mack, via telephone. He told Mack to retrieve the "twin" from Riley's dresser. Officers speculated that "twin" referenced the bullets that went with the gun Riley used to shoot April. The police had already executed a search of Riley's residence and retrieved everything from the dresser, including a box of ammunition.

Demetria received a letter from Riley that stated: ". . . you need to let [the police] know that it was still day-light out when I came up there this is very 'important' Don't say anything other than I know

2

it was still day light when he came up here." (errors and emphases in original). Because the envelope had Riley's name on it and the contents of the letter "referr[ed] to his son as Jr.[,]" Demetria believed the letter to be written by Riley even though she had never seen his handwriting before.

Over Riley's objection, the trial court allowed Courtney Baird, a forensic document examiner with the Indiana State Police, to testify as an expert witness. Baird compared the letter sent to Demetria with other writing by Riley, specifically "six pages of request known writing and three forms and a half page of non-request known writing." Baird indicated the request known writing had indications of an attempt to disguise or distort. However, she was able to proceed to a comparison. Baird determined it was "probable that Kevin Riley . . . was the writer of the letter." She explained: "The opinion [']probable['] means that evidence contained in the handwriting points rather strongly towards both the questioned and the known writing, [sic] having been written by the same individual. However, it is short of virtually certain degree of confidence."

Preston Meux, a friend of Riley, was incarcerated at the same time as Riley. Riley gave Meux a letter to give to Mack. Meux lost the letter while he was processing out of jail. He wrote down what he remembered it to say. He wrote: "Yo Bro said to talk to Marian and tell her don't say shit else and not to show up to court anymore. And if she on that bs, then do what you gotta do. Also if the cops ask tell them that the twin he told you to get out the dresser meant drugs." (errors in original). Meux wrote this out on the back of a receipt with the reminder: "GIVE TO MACK." Meux left the note on the door of Mack's house. Jessica Mitchell, another occupant of the house, retrieved the note and gave it to her mother, Dorothy Robertson, who is Marian's "auntie." Dorothy gave the note to Marian. Marian gave the note to Lake County Sheriff's Department Detective Joseph Hardiman. Over Riley's objection, Detective Hardiman testified Marian was afraid because the note appeared to confirm Riley was a threat to her.

At trial, Riley wanted to question Meux regarding a pre-trial diversion ("PTD") agreement Meux had signed during the pendency of Riley's case. Both the State and Meux said the agreement was not offered as a benefit for Meux's testimony in Riley's case. When the trial court asked Meux about receiving a benefit for his testimony, Meux explained he had not received a benefit for his testimony because, he "had a witness to come forth on that case to say that [he] didn't—[he] was not in possession of a firearm or anything like that. That's why [his] charges was dropped and everything because

3

it was a witness on [his] case." (errors in original). When asked specifically if he had received a benefit from the State for his testimony in Riley's case, Meux unequivocally answered, "No."

Rogerick Denham was incarcerated with Riley. He testified Riley and he had formed a friendship and Riley wished him to "demonstrate" on Marian [and explained that "demonstrate" meant to kill someone]. Denham reported Riley's request through an anonymous tip line provided at the jail. Denham told Detective Hardiman that Riley offered to have "some woman" bail him out of jail. However, that never came to fruition. Working with police, Denham was released from jail with an electronic monitoring device. Denham said Riley told him who to contact to obtain a murder weapon and to learn how to find Marian. Denham contacted those individuals, but no weapon or information was ever provided.

*Riley v. State*, No. 45A05-1708-CR-1821, 2018 WL 2375855, at *1–3 (Ind. Ct. App. May 25, 2018) ("*Riley I*") (in the record at docket 11-6) (citation to state-court record and footnotes omitted).

Mr. Riley appealed, raising issues about the trial court's rulings related to permitting Baird to testify as an expert; not permitting evidence about a pretrial diversion agreement the State made with Meaux; allowing Detective Hardiman to testify about Marion's fear upon receiving the note addressed to Mack; and not permitting questioning about Denham tampering with his ankle monitor. *Riley I*, 2018 WL 2375855, at *3–8. Finding no error in the trial court's evidentiary rulings, the Indiana Court of Appeals affirmed his convictions. *Id.* at *9. Mr. Riley sought transfer from the Indiana Supreme Court, dkt. 11-7, and the petition was denied, dkt. 11-2 at 6.

### B. Post-Conviction Proceedings

In 2019, Mr. Riley filed a pro se petition for post-conviction relief and requested the assistance of the Indiana State Public Defender. Dkt. 11-9 at 2,

dkt. 2-2 at 6. Appointed counsel moved to withdraw under Indiana Post-Conviction Rule 1(9)(c),[1] which resulted in Mr. Riley proceeding pro se. Dkt. 11-9 at 3. Mr. Riley later filed an amended petition. *Id.* at 4. An evidentiary hearing was held at which Mr. Riley presented the testimony of his trial counsel, Mark Gruenhagen, and his appellate counsel. Dkt. 11-9 at 7, dkt. 11-13 at 8. The post-conviction court denied Mr. Riley's amended petition. Dkt. 11-9 at 8-10.

Mr. Riley appealed from the denial of post-conviction relief and presented three arguments: (1) that the post-conviction court erred when it denied his ineffective assistance of counsel claims; (2) that newly discovered evidence warranted reversal of his convictions; and (3) that his right to effective assistance of counsel was denied when he was not provided counsel during post-conviction proceedings. Dkt. 11-11. As to his ineffective assistance of trial counsel claim, Mr. Riley specifically argued that his counsel was ineffective for failing to (1) conduct an adequate pretrial investigation, including a failure to (a) interview occupants of April's house, (b) obtain discovery from the State of M.B.'s police interview and fully investigate the window tint on Marian's car, and (c) call a handwriting expert as a witness to rebut the State's handwriting witness;

---

[1] This rule provides: "Counsel shall confer with petitioner and ascertain all grounds for relief under this rule, amending the petition if necessary to include any grounds not included by petitioner in the original petition. In the event that counsel determines the proceeding is not meritorious or in the interests of justice, before or after an evidentiary hearing is held, counsel shall file with the court counsel's withdrawal of appearance, accompanied by counsel's certification that 1) the petitioner has been consulted regarding grounds for relief in his pro se petition and any other possible grounds and 2) appropriate investigation, including but not limited to review of the guilty plea or trial and sentencing records, has been conducted. Petitioner shall be provided personally with an explanation of the reasons for withdrawal. Petitioner retains the right to process pro se, in forma pauperis if indigent, after counsel withdraws." Ind. P-C.R. 1(9)(c).

(2) effectively cross-examine of Marian and M.B.; and (3) call Tamika as a witness.

The Court of Appeals denied relief. *Riley v. State*, No. 21A-PC-1760, 2022 WL 4113112, at *1 (Ind. Ct. App. Sept. 9, 2022) ("*Riley II*") (in the record at docket 11-13). First, it concluded that Mr. Riley waived most of his ineffective assistance of counsel claims by not including them in his petition as required under Indiana Post-Conviction Rule 1(8). *Id.* at *5; *see* Ind. P-C.R. 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in the original petition."). The court addressed only one ineffective assistance of counsel claim on the merits—whether counsel was ineffective for failing to call his own handwriting analysis expert—and concluded that trial counsel's decision to cross-examine the government's expert rather than find his own expert was a reasonable strategic decision. *Id.* at *6. In a footnote, the appellate court found that Mr. Riley had waived his newly discovered evidence claim by not including it in his petition for post-conviction relief, and that his claim regarding the assistance of post-conviction counsel was waived and unavailable for review because he had elected to proceed pro se and could not allege himself ineffective. *Id.* at *1, n.1.

Riley filed a petition to transfer to the Indiana Supreme Court, dkt. 11-14, which was denied, dkt. 11-10 at 7.

In 2022, Riley filed a Petition for Permission to File Successive Verified Petition for Post-Conviction Relief. Dkt. 2-5; *Riley v. State*, 22A-SP-03043, Case Summary available at mycase.in.gov. In that petition, he sought to introduce newly discovered evidence that Denham recanted his testimony from Mr. Riley's

6

trial that Mr. Riley had admitted to committing the murder and had solicited Denham to intimidate and possibly kill Marian. Dkt. 2-5 at 3. The Indiana Court of Appeals denied authorization for him to file a successive petition, concluding that Mr. Riley had "failed to establish a reasonable possibility that [he] is entitled to post-conviction relief[.]" Case Summary, *Riley v. State*, 22A-SP-03043 (Ind. Ct. App., Jan. 27, 2023).

### C. Federal Habeas Petition

In Mr. Riley's 28 U.S.C. § 2254 petition, he raises the following claims: (1) that the Indiana Court of Appeals unreasonably applied clearly established federal law and engaged in unreasonable fact-finding when it held that Mr. Riley had waived the majority of his ineffective assistance of counsel claims; (2) that trial counsel was ineffective in several respects; and (3) newly discovered evidence entitles Mr. Riley to a new trial. Dkt. 2.

## II.    Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of a petitioner's claim, a federal court cannot grant habeas relief unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). If the last reasoned state court decision did not adjudicate the merits of a claim, or if the adjudication was unreasonable under § 2254(d), federal habeas review of that claim is *de novo. Thomas v. Clements*, 789 F.3d 760, 766–68 (7th Cir. 2015).

Section 2254(d) is not the only obstacle to habeas relief. A petitioner may procedurally default his claim by failing to fairly present it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F. 3d 258, 268 (7th Cir. 2014). Procedural default also occurs when "the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted).

### III.    Discussion

Respondent argues that Mr. Riley's claims are not cognizable, procedurally defaulted, and meritless.

## A. Procedural Default and Ineffective Assistance of Post-Conviction Counsel

In his petition, in the section labeled "Ground One," Mr. Riley argues that the Indiana Court of Appeals unreasonably applied clearly established federal law and engaged in unreasonable fact-finding when it held that Riley had waived most of his ineffective assistance of counsel claims. Dkt. 2 at 5. Respondent argues that this claim is not cognizable because habeas relief is only available for violations of federal law, and the Indiana Court of Appeals found that Mr. Riley's ineffective assistance of counsel claims were waived under state law. Dkt. 11 at 9 (citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

"Like pro se complaints, pro se habeas petitions must be construed liberally." *Famous v. Fuchs*, 38 F.4th 625, 631 n.22 (7th Cir. 2022). Although Mr. Riley labels his argument regarding the state appellate court's application of waiver as "Ground One" in his petition, he does not treat this as a standalone claim. He explains that after his appointed counsel from the State Public Defender withdrew from his case, he was left to litigate his post-conviction petition on his own, where he struggled with following the procedural requirements to present his claims. Dkt. 2 at 6–7. He contends that post-conviction counsel's ineffectiveness constitutes cause to excuse the procedural default of his ineffective assistance of trial counsel claim. *Id.* at 7 ("Riley was entitled to the effective assistance of counsel in his post-conviction relief proceeding to litigate ineffective assistance of trial counsel claims. Riley was denied this right, and the Court should find this as cause for Riley to avoid

procedural default for issues that were not raised (or were improperly raised or not properly supported) in the state PCR proceeding.").

Mr. Riley is correct that, for petitioners convicted in Indiana, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *see Brown v. Brown*, 847 F.3d 502, 510 (7th Cir. 2017) (holding that *Martinez* applies to petitioners convicted in Indiana). Under *Martinez*, a habeas petitioner may overcome procedural default if he demonstrates that his collateral review attorney was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), *and* that his ineffective assistance of trial claim "has some merit." *Id.* at 14.

Here, the Court does not address procedural default because, as explained below, it's clear that Mr. Riley is not entitled to relief on the merits of his ineffective assistance of trial counsel claim. *See Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) ("There is no necessary priority among non-jurisdictional reasons for rejecting a suit or claim."); *Carrion v. Butler*, 835 F.3d 764, 772 (7th Cir. 2016) (bypassing both statute of limitations and procedural default defenses "because even [if] we were to decide each of them in [the petitioner's] favor, his claims clearly fail on the merits").

## B. Ineffective Assistance of Trial Counsel

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that "counsel's assistance was so defective as to require reversal," a

petitioner must show: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Here, Mr. Riley brings the same ineffective assistance of trial counsel claims that he raised on appeal before the Indiana Court of Appeals. Specifically, he alleges that trial counsel was ineffective for failing to (1) conduct an adequate investigation by (a) failing to interview April's neighbors and everyone present in April's home at the time of the crime, (b) failing to obtain a recorded interview of a witness, (c) failing to investigate the window tint of Marian's car, and (d) failing to consult a handwriting expert; (2) effectively cross-examine Marian and M.B.; (3) consult a handwriting expert; and (4) call Tamika as a rebuttal witness. Dkt. 2 at 9–21. He further alleges that he suffered from cumulative prejudice from these errors. *Id.* at 21.

For the handwriting expert issue, the Court evaluates whether the Indiana Court of Appeals reasonably applied clearly established federal law, 28 U.S.C. § 2254(d). The Court reviews the remaining issues *de novo*, as the Indiana Court of Appeals did not adjudicate the merits and instead resolved them on procedural grounds. *See Thomas*, 789 F.3d at 766–68.

### 1.   Handwriting Expert

The Court first considers the only ineffective assistance of counsel claim that the Indiana Court of Appeals decided on the merits—whether trial counsel was ineffective for failing to call his own handwriting expert to rebut the State's handwriting expert. *Riley II*, 2022 WL 4113112 at *5. First, the Indiana Court of Appeals correctly stated the *Strickland* standard. *Id.*

It then recounted the post-conviction court's summary of trial counsel's testimony at the post-conviction hearing:

> [Trial Counsel] Gruenhagen testified at the post-conviction relief hearing as follows:
> * * * * *
> i) that rather than call a handwriting expert to challenge the State's expert witness, [counsel] was allowed great latitude at trial to go over Daubert issues and challenge them in front of the jury where he cross-examined the State's witness on her finding of "probable" related to the handwriting at issue, and [he] challenged said witness with her own scholarly article to attack her credibility. [Trial Counsel] Gruenhagen further testified that on cross-examination, the State's expert witness testified to a range of identities (excluded/neutral/identified), and that by not being able to identify Riley, she [had] violated her own norms, and [had] "basically confessed" on the stand that she did not have enough evidence to say "that man [Riley] did it."

*Id.* The post-conviction court concluded that trial counsel made a strategic decision not to hire an independent expert and instead focus on impeaching the

State's expert. *Id.* The Indiana Court of Appeals agreed with that assessment, concluding that Mr. Riley failed to show that this strategy constituted deficient performance, and, further, that he did not show a reasonable probability of a different result had counsel hired an expert.

This was a reasonable application of clearly established federal law. As the Supreme Court recently observed, "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)) (reversing Eleventh Circuit's grant of habeas relief and finding state court reasonably concluded that trial counsel was not ineffective for failing to hire an expert to testify that capital defendant was intellectually disabled); *see also Harrington*, 562 U.S. at 111 ("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense. In many instances cross-examination will be sufficient to expose deficiencies in an expert's presentation."). Here, the Indiana Court of Appeals' deference to trial counsel's strategic decision is bolstered by counsel's testimony that he believed the prudent course was to impeach the credibility of the State's expert.  Federal habeas relief is therefore barred by § 2254(d).

### 2.    Failure to Interview Witnesses

Mr. Riley alleges that if his attorney had interviewed the other occupants of the victim's home or nearby neighbors when the shooting occurred, they could have helped prove that Mr. Riley was not present when the crime was committed.

But Mr. Riley produced no evidence during the state post-conviction proceedings to support this claim. PCR App'x Vol. 2 at 18 (post-conviction court finding that Petitioner failed to present any evidence about exculpatory witnesses). "When the alleged deficiency is a failure to investigate, the movant must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (cleaned up). At the post-conviction hearing, Mr. Gruenhagen testified that he did interview the occupants of the house to determine what they saw or heard. Dkt. 13-2 at 7. Mr. Riley did not produce any evidence during the state post-conviction proceedings about what the house occupants or any neighbors would have said that would have been helpful to his case. PCR App'x Vol. 2 at 18. Thus, he cannot show that Mr. Gruenhagen's performance was deficient for failing to interview additional witnesses.

Nor could Mr. Riley show prejudice on this claim because Mr. Gruenhagen solicited testimony from various witnesses that no one besides Marian witnessed Mr. Riley at the scene. The victim's children testified that they neither saw nor heard Mr. Riley at the house when their mother was shot, and that they did not hear Marian scream. Dkt. 13-13 (DA Tr. Vol. III) at 118, 120–21, 124, 126, 133, 143–45. Law enforcement witnesses also testified that there were other people in the house at the time of the shooting, that the police canvassed the neighborhood, and that none of these other persons had witnessed the shooting or had any information that aided the investigation. Dkt. 13-14 (DA Tr. Vol. V) at 64–67, 138–48; dkt. 13-15 (DA Tr. Vol. VI) at 77–78, 97. Thus, Mr. Riley has

failed to show a reasonable probability of a different outcome at trial had counsel interviewed these witnesses.

### 3. Failure to Obtain Discovery; Adequacy of Cross-Examination

Mr. Riley alleges that his trial counsel failed to make a complete discovery request of the State, including that he failed to obtain the criminal histories of all jailhouse informants and did not receive a recording of M.B.'s police interview. Dkt. 2 at 11–13.

This claim is refuted by the trial record and trial counsel's testimony at the post-conviction relief hearing. At that hearing, Mr. Gruenhagen testified that he received "voluminous discovery" from the State, all of which he reviewed with Mr. Riley. Dkt. 13-2 (PCR Tr.) at 17. Indeed, the State filed more than two dozen notices of discovery. Dkt. 13-4 (DA App'x Vol. II) at 18–20, 24, 30–31, 38–39, 41–42, 44–46, 51, 55, 75–76, 114, 121, 128, 131–32, 160–61, 163–65, 168–69, 171, 181, 183, 196, 200–03, 244; dkt. 13-5 (DA App'x Vol. III) at 2.

Mr. Gruenhagen also testified that he obtained the criminal history of witnesses, including the jailhouse informants. Dkt. 13-2 at 7–8. And Denham—the inmate who testified that Mr. Riley asked him to intimidate or murder Marian—testified that he had been in prison for voluntary manslaughter. Dkt. 13-17 (DA Tr. Vol. 7) at 76. Finally, Mr. Riley introduced no evidence of the informants' criminal histories at the post-conviction hearing to show how those histories would have made any difference to the jury. *See generally*, dkt. 13-2. Thus, he has failed to meet his burden that trial counsel was ineffective for failing to either obtain the histories (as the evidence shows he did) or to introduce them at trial. *Burt v.*

*Titlow*, 571 U.S. 12, 17 (2013) (noting that "the burden to show that counsel's performance was deficient rests squarely on the defendant" and "the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance").

With respect to obtaining an audio recording of M.B.'s police interview, Mr. Riley has failed to show how trial counsel was ineffective. At trial, Mr. Gruenhagen cross-examined M.B., using both her statement to police and her deposition to impeach parts of her testimony, specifically that she had heard her mother and Marian arguing outside the house. Dkt. 13-13 (DA Tr. Vol. III) at 140−42. Although the prosecutor was able to rehabilitate M.B. by asking her whether she actually heard her mother arguing with Mr. Riley on the phone earlier in the day, that does not undermine the presumption that trial counsel's impeachment of M.B. with her prior inconsistent statements was reasonable. *Burt*, 571 U.S. at 17. *See also United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008) ("deciding what questions to ask a prosecution witness on cross-examination is a matter of strategy").

Further, Mr. Riley has failed to show that Mr. Gruenhagen's cross-examination of Marian was deficient. Mr. Gruenhagen cross-examined Marian extensively about her prior statements to police (that she admitted were lies), that she continued to spend time with Mr. Riley after the murder, and that she continued to send him loving messages on Facebook after the murder. Dkt. 13-13 (DA Tr. Vol. III) at 23−70, 80−84; dkt. 13-14 (DA Tr. Vol. IV) at 23−31, 57−60, 175−78, 181, 187−91. Although Mr. Riley believes counsel should have cross-

16

examined Marian more thoroughly on her access to the dresser where the ammunition was found or on her history of gun ownership, Mr. Gruenhagen elicited evidence that Marian's sister Tamika had told police that Marian owned guns in the past and elicited testimony that Marian shared the bedroom with Mr. Riley and thus would have had equal access to the dresser. Dkt. 13-14 (DA Tr. Vol. IV) at 199; dkt. 13-15 (DA Tr. Vol. V) at 153−54, 158, 164. Thus, this claim is meritless.

### 4.    Window Tint

Mr. Riley argues that trial counsel was ineffective for failing to investigate whether Marian's car windows were tinted in order to impeach M.B. and K.B.'s testimony that they didn't see Mr. Riley due to the window tint. He bases this claim on Detective Hardiman's testimony at the Petition to Let Bail hearing that he "[didn't] believe" the car's windows were tinted. Dkt. 13-11 (DA Tr. Vol. I) at 126. But Mr. Riley produced no evidence during the post-conviction proceedings—such as pictures—that the windows were indeed not tinted, and Detective Hardiman's testimony was far from resolute. Again, he has failed to meet his burden of proof that counsel performed deficiently absent evidence that the car windows were not tinted. *Burt*, 571 U.S. at 17.

### 5.    Failure to Call Tamika as a Rebuttal Witness

Mr. Riley finally argues that Mr. Gruenhagen was ineffective for not calling Tamika as a rebuttal witness to impeach Marian's testimony that she did not

17

own a firearm and her testimony denying she had previously stated that the victim got what she deserved. Dkt. 2 at 19−20.

Counsel did not perform deficiently. Tamika could not be located before trial and was thus declared unavailable. Dkt. 13-13 (DA Tr. Vol. III) at 89−92. Because Tamika had not been deposed, both parties agreed that both sides could ask witnesses about hearsay statements that Tamika made. *Id.* As a result of this agreement, trial counsel was able to put before the jury evidence from law enforcement officers that Tamika had said Marian owned guns in the past and that she had a conversation with Marian after the shooting in which Marian said "that bitch got what she deserved." Dkt. 13-14 (DA Tr. Vol. IV) at 191, 197, 199; dkt. 13-15 (DA Tr. Vol. V) at 153–54. This strategy was sound, because Tamika—had she been located—may have recanted these helpful statements or been deemed as not credible by the jury.

In summary, Mr. Riley has failed to show that trial counsel performed deficiently. And because the Court has found no single instance of deficient performance, it need not evaluate whether counsel's cumulative performance was ineffective. *See Hough v. Anderson*, 272 F.3d 878, 891 n.14 (7th Cir. 2001) (noting "if there are no errors or a single error, there can be no cumulative error").

### C. Newly Discovered Evidence

In his final ground for relief, Mr. Riley alleges that newly discovered evidence entitles him to a new trial. Dkt. 2 at 23−27. Specifically, he alleges that State's witness Rogerick Denham has recanted his testimony that Mr. Riley admitted to committing the murder and solicited Denham to intimidate or even

kill Marian. *Id.* at 24. He further states that "[t]he evidence of Denham's affidavit meets all nine . . . factors [for newly-discovered evidence]." *Id.* at 23–27.

This claim is not cognizable because it is not based on a constitutional violation. Instead, Mr. Riley relies on Indiana's standard for obtaining a new trial based on newly discovered evidence. *Id.* at 23–24 (citing *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010) (listing nine requirements a petitioner seeking a new trial based on newly discovered evidence must show). Mr. Riley's reliance on state law and his failure to identify a constitutional violation is fatal to his claim. S*ee Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")

Because this claim is not cognizable, Mr. Riley is not entitled to relief.

## IV.    Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Instead, the prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115 (cleaned up).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court finds that jurists of reason would not disagree with any of the Court's conclusions, including that the Indiana Court of Appeals reasonably applied *Strickland* when it found trial counsel was not ineffective for failing to hire an independent handwriting expert; that Mr. Riley has failed to demonstrate any instance of deficient performance; and Mr. Riley's claim based on newly discovered evidence is not cognizable. Accordingly, a certificate of appealability is **denied**.

### V.    Conclusion

For the foregoing reasons, Mr. Riley's petition for a writ of habeas corpus is **denied**, and no certificate of appealability shall issue. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 10/23/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN DEREK RILEY
974309
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Sierra A. Murray
INDIANA ATTORNEY GENERAL
sierra.murray@atg.in.gov